**Elpidio Pete PLACENCIA**

v.

**Lauren Rochelle PLACENCIA.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Dec. 27, 2000.

Permission to Appeal Denied by Supreme Court May 21, 2001.

Robert A. Talley, Memphis, for appellant, Lauren Rochelle Placencia.

Edward M. Bearman, James M. Allen, Memphis, for appellee, Elpidio Pete Placencia.

## OPINION

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., joined.

This is a post-divorce action involving custody and relocation of the parties' minor child. Father, primary custodial parent, filed a petition to relocate, and Mother filed a petition for change of custody. The trial court awarded custody of the child to Mother, and Father appealed. This Court reversed the custody award and remanded the case to the trial court. Pending application for permission to appeal to the Supreme Court, Mother filed a petition for stay of execution and a temporary injunction and also requested a change of custody based on changed circumstances. After the Supreme Court denied the application for permission to appeal, the trial court entered its order denying Mother's request for a hearing on her petition and denying other relief sought. Mother has appealed to this Court.

Elpidio Pete Placencia ("Father") and Lauren Rochelle Placencia ("Mother") were divorced in May of 1992. The parties' marital dissolution agreement, which was later incorporated into the final divorce decree, provided that Father would have custody of the parties' minor child, Megan Placencia ("Megan"), and that Mother would have reasonable visitation with the child. Five years later, Father filed a petition seeking to relocate to Georgia to accept a better-paying job. At that time, Mother filed a petition to prevent Father from removing the child from Tennessee, and seeking a change in custody. The trial court granted Mother custody of Megan, finding a material change in circumstances, and Father appealed. This Court reversed the trial court[1], and on September 13, 1999, the Tennessee Supreme Court denied Mother's application for permission to appeal.

Following *Placencia I*, Mother filed the instant action in Shelby County Circuit Court, alleging additional changes in circumstances warranting modification of custody, and seeking a hearing on Father's intention to relocate with Megan. The trial court denied Mother's petition, finding that the court "took into consideration all issues and factors in the Court's original ruling and the Court of Appeals has spoken to those issues." During the three years the parties pursued legal action in this matter, Megan resided with her mother pursuant to court order.

The parties raise two issues on appeal: (1) Whether the trial court erred in refusing to grant Mother a hearing on her

1. For purposes of this opinion, we will refer to our prior opinion in *Placencia v. Placencia,* 3 S.W.3d 497 (Tenn.Ct.App.1999), as *"Placencia I"*.

petition to modify custody; and (2) Whether the trial court erred in refusing to grant a hearing on the issue of the removal of the minor child. For the reasons below, we find that the trial court erred in denying Mother a hearing on both petitions.

■ The trial court's denial of Mother's request for a hearing is a question of law. As such, our review of the trial court order is *de novo* upon the record with no presumption of correctness accompanying the trial court's conclusions of law. *See* Tenn. R.App.P. 13(d); *Waldron v. Delffs*, 988 S.W.2d 182, 184 (Tenn.Ct.App.1998); *Sims v. Stewart*, 973 S.W.2d 597, 599–600 (Tenn. Ct.App.1998).

Our Supreme Court has said, "Every man has a right to his day in Court, that is to have a hearing after due notice...." *Real Estate Comm'n v. McLemore*, 202 Tenn. 540, 306 S.W.2d 683, 686 (1957). Additionally, the "Open Courts" section of the Tennessee Constitution provides:

> That all courts shall be open; and every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial, or delay. Suits may be brought against the state in such manner and in such courts as the Legislature may by law direct.

Tenn. Const. art. 1, § 17. The Tennessee Constitution also provides:

> That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers, or the law of the land.

Tenn. Const. art. 1, § 8.

Tennessee has long recognized that a parent's right to custody is a fundamental liberty interest which may not be abridged absent due process of law. *See, e.g., In re Knott*, 138 Tenn. 349, 197 S.W. 1097, 1098 (1917); *State ex rel. Bethell v. Kilvington*, 100 Tenn. 227, 45 S.W. 433, 434 (1898); *Neely v. Neely*, 737 S.W.2d 539, 542 (Tenn. Ct.App.1987). Under the authorities cited above, therefore, it would be a violation of Mother's rights if she were denied her day in court on either the petition to modify or the original petition to relocate in this matter. We must, therefore, determine if Mother has been afforded an opportunity to be heard on the petitions which are the subject of this appeal.

■ We first address the original Petition to Modify Final Decree of Divorce which Mother filed on March 12, 1997 in response to Father's Petition to Relocate. Mother argues that, in its initial ruling on which parent should have custody of Megan, the trial court and this Court pretermitted the issue of relocation. Mother explains that she has a right to be heard on the issue of whether relocation is appropriate in this case. We agree.

T.C.A. § 36–6–108(d) governs the issue of relocation in a situation where one parent spends greater time with the child than the other parent. That section provides, in relevant part:

> (d) If the parents are not actually spending substantially equal intervals of time with the child and the parent spending the greater amount of time with the child proposes to relocate with the child, the other parent may, within thirty (30) days of receipt of the notice, file a petition in opposition to removal of the child. The other parent may not attempt to relocate with the child unless expressly authorized to do so by the court pursuant to a change of custody or primary custodial responsibility. **The parent spending the greater amount of time with the child shall be permit-**

ted to relocate with the child unless the court finds:

**(1)** The relocation does not have a reasonable purpose;

**(2)** The relocation would pose a threat of specific and serious harm to the child which outweighs the threat of harm to the child of a change of custody; or

**(3)** The parent's motive for relocating with the child is vindictive in that it is intended to defeat or deter visitation rights of the non-custodial parent or the parent spending less time with the child.

Specific and serious harm to the child includes, but is not limited to, the following:

(1) If a parent wishes to take a child with a serious medical problem to an area where no adequate treatment is readily available;

(2) If a parent wishes to take a child with specific educational requirements to an area with no acceptable education facilities;

(3) If a parent wishes to relocate and take up residence with a person with a history of child or domestic abuse or who is currently abusing alcohol or other drugs;

(4) If the child relies on the parent not relocating who provides emotional support, nurturing and development such that removal would result in severe emotional detriment to the child;

(5) If the custodial parent is emotionally disturbed or dependent such that the custodial parent is not capable of adequately parenting the child in the absence of support systems currently in place in this state, and such support system is not available at the proposed relocation site; or

(6) If the proposed relocation is to a foreign country whose public policy does not normally enforce the visitation rights of non-custodial parents, which does not have an adequately functioning legal system or which otherwise presents a substantial risk of specific and serious harm to the child.

T.C.A. § 36–6–108(d) (Supp.2000)(emphasis added).

In *Placencia I,* neither the trial court nor this Court based their rulings on the issue of the propriety of Father's relocation, but disposed of the case on the custody issue of changed circumstances. *See* 3 S.W.3d at 502–503. Father argues that both courts addressed the relocation by implication in addressing the issue of custody. While, at first glance, this argument has appeal, we feel that the issues involved in allowing a custodial parent to relocate with a child are too important to leave to "implication."

The statute governing relocation specifically sets out three considerations which factor into a court's decision to allow the custodial parent to relocate: (1) a reasonable purpose for the relocation; (2) whether the relocation would pose a threat of specific and serious harm to the child; and (3) whether the parent's motive for the relocation is vindictive. *See* T.C.A. § 36–6–108(d). The only issue this Court addressed in *Placencia I* was whether Father's motive for relocating was vindictive. *See* 3 S.W.3d at 500. This Court noted that it was not. *Id.*

T.C.A. § 36–6–108(d) does not appear to require specific findings as to the three elements listed above, and we have found no Tennessee case which directly addresses whether such findings are required. However, given the fundamental nature of the interests involved, we hold that the trial court ruling should at least have addressed the issues of "reasonable purpose"

and "specific and serious harm" in its opinion in this matter.

Further, we hold that, even if the trial court had addressed all three prongs of the applicable statute, Mother's second Petition to Modify, dated May 25, 1999, should be considered as an amendment to her original response to Father's Petition to Relocate. Mother has alleged certain facts, specifically: (1) that Husband has left his job in Georgia and is attending law school in Topeka, Kansas;[2] and (2) that, for the past two years, Megan has resided with her Mother in Tennessee. Whether the proof under these allegations has a bearing on Father's right to relocate is a matter for the trial court to determine. We hold only that Mother should be allowed an evidentiary hearing on Father's proposed relocation.

Even assuming, *arguendo*, that Mother has had her day in court on the issue of relocation, we hold that the trial court erred in denying her request for a hearing pursuant to her Petition to Modify filed May 25, 1999. As we noted, that petition alleges a material change in circumstances warranting modification of custody. This is a new petition, and alleges new facts which the trial court *must* consider under T.C.A. § 36-6-101(a)(1)(Supp.2000), which provides that the issue of custody "shall remain within the control of the court and be subject to such changes or modification as the exigencies of the case may require." *Id.* As we noted in *Placencia I*:

> When considering a petition to modify custody, the threshold issue is whether there has been a material change in circumstances occurring subsequent to the initial custody determination. If the trial court determines that there has, in fact, been a material change in circumstances, the court then seeks to devise a custody arrangement that is in the best interests of the child. Absent a material change in circumstances, however, the petition to modify custody must be denied.

3 S.W.3d at 499 (citations omitted). Again, we do not hold that Mother's allegations amount to a material change in circumstances warranting modification of the original decree. We only hold that Mother has a right to present evidence in support of her petition.

Accordingly, the order of the trial court is vacated and the case is remanded to the trial court for an evidentiary hearing on the issue of Father's relocation and on the issue of custody because of changed circumstances subsequent to the date of the Court of Appeals Opinion. Costs of the appeal are assessed to appellee, Elpidio Pete Placencia.

HOLLY KIRBY LILLARD, J., joined with separate concurring opinion.

HOLLY KIRBY LILLARD, J., concurring.

I agree fully with the result reached by the majority in this case. I write separately to clarify my reasoning with regard to relocation.

The reasoning in the majority opinion refers to Tennessee Code Annotated § 36-6-108(d), which sets forth the standard where the child spends greater time with the parent who proposes to relocate. However, under the facts in this case, it is unclear to me whether the trial court's

---

2. The parties appear to dispute why Husband left his employment with Wal-mart. Mother alleges that Father left voluntarily, while Father argues he left because of his unwilling- ness to participate in "something that endangered individuals and was contrary to the law."

hearing on relocation would be pursuant to T.C.A. § 36–6–108(d) or pursuant to Section 36–6–108(c), which governs parental relocation where the parents are spending substantially equal intervals of time with the child. Subsection (c) provides:

(c) If the parents are actually spending substantially equal intervals of time with the child and the relocating parent seeks to move with the child, the other parent may... file a petition in opposition to removal of the child. *No presumption in favor of or against the request to relocate with the child shall arise. The court shall determine whether or not to permit relocation of the child based on the best interests of the child.* The court shall consider all relevant factors including the following where applicable....

T.C.A. § 36–6–108(c) (Supp.2000) (emphasis added). The statute then lists the eleven "best interest" factors set forth in the majority opinion.

In this case, prior to Mother's initial petition to change custody, Megan resided primarily with Father. After Mother filed the initial petition to change custody and Father filed his petition seeking permission to relocate with Megan to Georgia, the trial court ordered that, during pendency of the proceedings, custody would be placed with Mother. Father moved to Georgia, and for nearly three years Megan resided with Mother while the appeal was pending to this Court and to the Tennessee Supreme Court. When the trial court entered the order at issue in this case, in November 1999, custody was then placed with Father during the pendency of this appeal.

Under these circumstances, it is unclear which subsection of Section 36–6–108 ap-

plies. Megan resided primarily with Father when Mother's initial petition was filed, resided with Mother for nearly three years until the trial court's November 1999 order denying Mother a hearing on her petitions, and has resided with Father since then. Father argues that subsection (d), which governs situations in which the child has been spending greater time with the parent who seeks to relocate, should apply in this case, since this court held previously that custody should not have been changed to Mother. However, subsections (c) and (d) of Section 36–6–108 state expressly that the trial court must determine which subsection applies based on the reality of where the child is living, not which parent has legal custody.[1] Therefore, on remand, the trial court must make a factual determination of whether Megan has been residing primarily with Father during the pertinent time period (undefined in the statute), or whether Megan has actually spent substantially equal time with both parents.

In this appeal, it is not necessary for this Court to determine which subsection of Section 36–6–108 applies, because findings necessary to determine the issue of relocation have not been made by either the trial court or by this Court, regardless of which subsection governs. In the proceedings that were the basis for the first appeal, the trial court found that material changes in circumstances warranted a change of custody to Mother. Father's petition for permission to relocate with Megan was not decided.

On appeal, this Court reversed the trial court's change of custody. *Placencia v. Placencia*, 3 S.W.3d 497 (Tenn.Ct.App. 1999) (*Placencia I*). The appellate court

---

1. T.C.A. § 36–6–108(c) applies "[i]f the parents are *actually* spending substantially equal intervals of time with the child...." [emphasis added] T.C.A. § 36–6–108(d) applies "[i]f the parents are not *actually* spending substantially equal intervals of time with the child...." [emphasis added]

noted that there was no evidence that Father's motives for relocating were vindictive, and therefore could not "serve as a material change in circumstances warranting a redetermination of custody." *Id.* at 500. The appellate court also concluded that the other changes in circumstances did not warrant a change in custody. *Id.* at 502. The appellate court then went on to find that it was in Megan's best interest to remain in Father's custody, relying heavily on Tennessee's "strong presumption in favor of continuity of placement." *Id.* at 503. The issue of Father's petition for permission to relocate to Georgia with Megan was not addressed on appeal, since it had not been determined by the trial court.

Consequently, under either subsection (c) or subsection (d) of Section 36–6–108, the factual issues necessary to determine relocation have not been decided. This is particularly true in light of the changes in circumstances that have occurred since the filing of Mother's initial petition to change custody and Father's petition for permission to relocate. Father no longer works for Wal Mart in Georgia; rather, he attends law school in Topeka, Kansas.[2] Moreover, the perspective on "continuity of placement" for Megan in ascertaining her "best interests" has changed since the initial petitions, given the fact that Megan resided with Mother during the nearly three years preceding the trial court's order refusing to grant Mother a hearing.

In short, the issue of relocation must be addressed by the trial court, regardless of whether subsection (c) or subsection (d) of T.C.A. § 36–6–108 applies. This issue turns on the trial court's finding of wheth-

er Megan has spent greater time with Father or has spent substantially equal time with both parents, and need not be determined by this Court in this appeal.

On this basis, I concur.

---

**2.** The record does not reveal why Father chose to attend law school in Kansas rather than attending law school in Memphis, Tennessee, where Mother resides. *See Schremp v. Schremp,* No. W1999–01734–COA–R3–CV, 2000 WL 1839127 (Tenn.Ct.App. Dec.7, 2000). (Mother did not have a reasonable purpose to relocate to North Carolina to live with her new husband, a Federal Express pilot, where Mother's new husband had no compelling reason to refuse to move to Memphis to live with Mother.).