IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 13, 2002 Session

## IN RE: MACKENZIE J. MARLOWE, GREGORY MARLOWE v. STACY SMITH (GRAVES)

**Direct Appeal from the Juvenile Court for Unicoi County**
**No. 479     Hon. John L. Walton, Judge**

FILED JUNE 25, 2002

**No. E2002-00105-COA-R3-JV**

In this action the Trial Judge changed custody of the minor child to the father from the mother.  On appeal, we reverse.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Juvenile Court Reversed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J.,  and D. MICHAEL SWINEY, J., joined.

Judith Fain, Johnson City, Tennessee, for Appellant.

Lisa D. Rice, Elizabethton, Tennessee, for Appellee.

### OPINION

In this action, the Trial Judge entered an Order changing the custody of the child Mackenzie, from the mother to the father.  The mother has appealed, insisting the Trial Judge applied the wrong standard in it's custody determination.

The child was born on May 15, 1996, and on February 1, 1999, the maternal grandparents filed a Petition for custody, and with the mother's consent, custody of this child, was awarded to the maternal grandparents. In March of 2000, an Order was entered returning the custody of the children to the mother.  In April of 2000, a Petition was filed to Establish Paternity alleging

that Gregory Marlowe, was the natural father of Mackenzie. Subsequently an Agreed Order was entered declaring Gregory Marlowe as the father, but no child support was set by the Order. However, the Order recited that the "child [is] now in custody of mother".[1]

Subsequently, the mother filed a Petition for Support of the child. The father then filed a Motion for Change of Custody alleging that he has developed a close emotional relationship with the child and that the mother has been residing with a man in North Carolina and the child was living primarily with her maternal grandmother. He further alleged that his visitation with the child had been curtailed or denied by the mother and grandmother, and that the mother intended to relocate in North Carolina.

At the hearing, the father testified that he had been married a little over six years, and had three children, but had never been married to Mackenzie's mother. She told him several times he was Mackenzie's father, and they had testing done when Mackenzie was three, but he had no relationship with Mackenzie prior to that time. His paternity was established, and he testified that Mackenzie had been visiting overnight in his home with him and his wife and children, and that he tried to spend as much time with her as possible. He further stated that he and Mackenzie and his wife interacted very well, and that his relationship with Mackenzie progressed slowly at first, but that she had come around amazingly well and she was very warm and loving and happy. He further testified that Mackenzie's mother lived in the maternal grandmother's home off and on.

Father testified that when the mother told him she was going to move to Asheville, he did not like the idea of Mackenzie moving to Asheville with her mother, because it was an hour and a half away, and he would not be able to participate with his daughter as much, nor would her grandparents. He further testified that the mother had a newborn with her new husband, and he knew nothing about the new husband's parenting abilities, or anything else about him.

On cross examination, the father admitted that most of the time, when he went to pick Mackenzie up, she told him she did not want to go. But after he would pick her up at the home of the day care provider, she was not resistant to visitation.

The mother testified that she was now living in Asheville, North Carolina, and was married to Dimetric Graves, and that she was thirty-one years old, and had lived in Asheville for two years, but she clarified her testimony to say that from August of the year before the hearing until two months before the hearing, she had lived in Tennessee, at her mother's house, and that she had married on May 12, prior to the hearing.

While the Trial Judge did not articulate or find a change in circumstance, the issue before us thus becomes whether the evidence preponderates that there was, in fact, a change of

---

[1]Tenn. Code Ann. §36-2-311 provides "upon establishing parentage, the Court shall make an order declaring the father of the child. This order shall include the following: . . . (9) determination of the custody of the child pursuant to Chapter 6 of this Title".

circumstance. *Placencia v. Placencia*, 48 S.W.3d 732, 736 (Tenn. Ct. App. 2000). We have observed there are no hard and fast rules for determining when a child's circumstances have changed sufficiently to warrant a change of custody. *Solima v. Solima*, 7 S.W.3d 30 (Tenn. Ct. App. 1998). However, the change must occur after custody has been awarded, and must be a change that was not known or reasonably anticipated when the order was entered. *Smith v. Haase*, 521 S.W.2d 49,50 (Tenn. 1975). The Order establishing paternity gave custody to the mother, which the father has acknowledged by filing a Motion for Change of Custody.

Essentially, the only significant change of circumstance since the order was entered declaring Gregory Marlowe the father and leaving custody with the mother, was the development of a father/daughter relationship. The Trial Court observed: "Mr. Marlow has basically been in her life since July 10 of last year, a little over a year, and you are probably still getting to know her." The development of a loving relationship between a parent and child, salutary as that may be, may not be deemed a material change in circumstances warranting a change in custody, and is not an unexpected circumstance. *Blair v. Badenhope,* 940 S.W.2d 575, 576 (Tenn. Ct. App. 1996).

The evidence preponderates that there has not been a change of circumstances since Gregory Marlow was declared the child's father that would enable the Trial Judge to reach the comparative fitness analysis.

We reverse the Judgment of the Trial Court and Order custody to be returned to the mother and the cause is remanded for the Trial Court to establish visitation and support and to resolve any other matters consistent with this Opinion.

The cost of the cause is assessed to Gregory Marlowe.

_____
HERSCHEL PICKENS FRANKS, J.