IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 17, 2002 Session

## VICTORIA LYNN BARNES v. DAVID JOSEPH BARNES

**Direct Appeal from the Circuit Court for Madison County**
**No. 154753 R.D.     Robert A. Lanier, Judge**

_____

**No. W2002-00428-COA-R3-CV - Filed October 23, 2002**

_____

This appeal arises from a change of custody, from the Mother to the Father, granted by the trial court. We affirm, with the modification that Father be enjoined from smoking when either child is present.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed as modified; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Dorothy J. Pounders, Memphis, Tennessee, for the appellant, Victoria Lynn Barnes.

Linda L. Holmes, Memphis, Tennessee, for the appellee, David Joseph Barnes.

## OPINION

The parties were divorced in May, 1999. The parties had two minor children at the time of the divorce; Clara, born May 11, 1993 and Sydney, born January 24, 1996. The original divorce decree awarded custody of the two minor children to the Mother, with Father having visitation rights. Father remarried and Mother subsequently filed a Petition for Contempt and Modification of Final Decree of Divorce seeking, *inter alia*, an increase in child support based on the income of Father's new spouse. The trial court ordered that the Petition be heard by a Divorce Referee who dismissed the motion. Father filed his own Counter Petition to Modify Final Decree of Divorce, to wit: Custody seeking to gain custody of the minor children.

A two day trial was held, at which the trial judge heard from the parties and their witnesses. Numerous issues were addressed during the trial, including: the Mother's having had a child out of wedlock since the divorce, the Father's smoking in the presence of the children

who may have asthma,[1] the Mother's failure to provide required dental care for the oldest child, the Father allowing the children to access inappropriate material on a computer in his home, the Mother changing the children's school without notifying the Father, the Mother's decision to send the children to Texas for two weeks rather than allow them to stay with their Father, and the interaction each parent has had with the children's school and extracurricular activities. Upon conclusion of the trial, and consideration of the testimony regarding these issues, the parties were awarded joint custody with the principal place of residence being that of the Father.

Appellant presents the following issues on appeal:

I. Whether the trial court erred in modifying the original order of custody, granting a change of custody to Appellee?

II. Whether the trial court erred by modifying the original custody order without first explicitly weighing the comparative fitness of the parties?

## Standard of Review

In a civil action we review a trial court's findings of fact *de novo* upon the record of the trial court. Such review is accompanied by a presumption of correctness, unless the evidence preponderates against such findings. Tenn. R. App. P. 13(d); *Brooks v. Brooks*, 992 S.W.2d 403,404 (Tenn. 1999). Questions of law are reviewed *de novo*, with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

## Change of Custody

A party seeking to change an initial custody decision must prove "that the child's circumstances have materially changed in a way that could not have been reasonably foreseen at the time of the original custody decision, and . . . that the child's best interests will be served by changing the existing custody arrangement." *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997). Accordingly, "the threshold issue is whether there has been a material change in circumstances occurring subsequent to the initial custody determination." *Placencia v. Placencia*, 48 S.W.3d 732, 736 (Tenn. Ct. App. 2000).

## Material Change in Circumstances

Once the trial court has made an initial determination of the custody of a child, such custody may not be changed absent "a material change in circumstances such that the welfare of

---

[1]Mother testified that she had spoken with Father expressing her concerns about his smoking in the presence of the children, both of whom she testified had been diagnosed as suffering from asthma, a condition for which they were prescribed inhalers. Mother further testified that Father's response to her concerns was that he was "going to do what he wants to do."

the child demands a redetermination." ***Hoalcraft v. Smithson***, 19 S.W.3d 822, 828 (Tenn. Ct. App. 1999) (citing ***Massengale v. Massengale***, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995)). The primary inquiry under this standard is whether there has been a material change in ***the child's*** circumstances, as opposed to either, or both, of the parents. ***See Solima v. Solima***, 7 S.W.3d 30, 32 (Tenn. Ct. App. 1998). Additionally, the change must affect the child's welfare in a material way. ***See Dailey v. Dailey***, 635 S.W.2d 391, 393 (Tenn. Ct. App. 1981).

> Although there is no concrete definition for what constitutes a material change of circumstances, this court has enumerated several factors that should be taken into consideration when determining whether such a change has occurred. In general, the change must occur after the entry of the order sought to be modified and the change cannot be one that was known or reasonably anticipated when the order was entered. In addition, the material change of circumstances must be a change in the child's circumstances, not the circumstances of either or both of the parents. Finally, the change must affect the child's well-being in a material way.

***Hoalcraft***, 19 S.W.3d at 828-29 (internal citations omitted).

In the case currently before us, the trial court cited several factors that were considered in determining that a material change in the children's circumstances had taken place. Among the factors the trial court cited were:

> (1) Behavioral problems exhibited by the oldest child Clara, including "seductive" behavior inappropriate for a child her age.

> (2) The mother's insistence that the father not be allowed to pick the children up from school, although the Father had a court order permitting him visitation on that day.[2]

> (3) The mother's changing the children's school without notifying the father.

---

[2]"[A] custodial parent's obstruction of the noncustodial parent's visitation rights or conduct to preclude continuation of the parent-child relationship is a sufficient change of circumstances to warrant further consideration of a change of custody." ***Roache v. Bourisaw***, No. M2000-02651-COA-R3-CV, 2001 Tenn. App. LEXIS 756, at *19-20 (Tenn Ct. App. Oct. 10, 2001) (***no perm. app. filed***) (citing ***Wilson v. Tittle***, No. M2000-00115-COA-R3-CV, 2000 Tenn. App. LEXIS 579, at *18 (Tenn. Ct. App. Aug. 25, 2000) ***perm. app. denied*** (Mar. 12, 2001)).

(4) The mother's decision to treat Clara's abscessed teeth with antibiotics rather than extraction, although she could not clearly recall who gave her that advice.[3]

None of these occurrences could have been reasonably anticipated at the moment child custody was first granted to Ms. Barnes, and each specifically affected the children's circumstances in a material way. As such, the trial court properly found a material change in circumstances such that the custody of both children should be re-visited.

## Comparative Fitness

Once a material change of circumstance has been established, the court then determines what custody arrangement is in the best interest of the child and in doing so "courts are to utilize a 'comparative fitness' approach and determine which [parent] is more or less fit than [the] other[]." *Ruyle v. Ruyle*, 928 S.W.2d 439, 442 (Tenn. Ct. App. 1996).

"[I]n child custody cases, the child's best interest is the paramount consideration. It is the polestar, the alpha and the omega." *Contreras v. Ward*, 831 S.W.2d 288, 289 (Tenn. Ct. App. 1991) (citing *Bah v. Bah*, 668 S.W.2d 663, 665 (Tenn. Ct. App. 1983)). While the facts weighing upon a custody determination are infinite, "[t]he supreme rule to which all others should yield is the welfare and best interest of the child." *Holloway v. Bradley*, 230 S.W.2d 1003, 1006 (Tenn. 1950). When the court is asked to make a custody determination regarding minor children, "[e]very effort must be made to promote the child's interest by placing the child in an environment that will best serve his or her physical and emotional needs." *Parker v. Parker*, 986 S.W.2d 557, 562 (Tenn. 1999).

In order to determine what custody arrangement will be in the best interest of a child, the court assesses the comparative fitness of the parties involved. *Bah*, 668 S.W.2d at 666. The criteria a court shall consider when conducting this comparative fitness analysis are listed in section 36-6-106 of the Tennessee Code which states in pertinent part:

> In a suit for annulment, divorce, separate maintenance, or in any other proceeding
>
> requiring the court to make a custody determination regarding a minor child, such determination shall be made upon the basis of the best interest of the child. The court shall consider all relevant factors including the following where applicable:
>
> (1) The love, affection and emotional ties existing between the parents and child;

---

[3] "[A] neglect of general dental needs has been deemed a material change of circumstances." *Roache*, 2001 Tenn. App. LEXIS 756, at *22 (citing *Pisano v. Baker*, No. W1999-02660-COA-R3-CV, 2000 Tenn. App. LEXIS 625, at *5 (Tenn. Ct. App. Sep. 15, 2000) (*no perm. app. filed*)).

(2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;

. . . .

(4) The stability of the family unit of the parents;

. . . .

(6) The home, school and community record of the child;

. . . .

(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

. . . .

(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

Tenn. Code. Ann. § 36-6-106 (2002).

We are of the opinion that the trial judge's findings pertaining to the above cited statutory provisions indicate that the trial court undertook the required comparative fitness analysis. Specifically, the trial court made the following findings: With regard to the first criteria, the trial judge found that "Claire [sic] has expressed a desire . . . to spend more time with her father[,]" and that when the child awoke in the middle of the night frightened that she "called her father rather than waking up her mother because the mother doesn't 'coddle her.'"

The second criteria was addressed by the trial court's finding that "[o]n one occasion, Claire [sic] had serious dental problems which the mother was allegedly told could be treated without extraction of the teeth and by merely administering antibiotics." The court further noted that "[s]he could not recall who told her this." The court then compared the actions of the father in this regard, noting that "[t]he father took the child and had the teeth extracted because they were abscessed." *See Pisano*, 2000 Tenn. App. LEXIS 625, at *5 (discussing neglect of a child's dental needs in the context of a comparative fitness analysis).

Criteria number four concerns the stability of the family unit. The trial court compared the Mother and Father's current situations and noted that the husband has remarried, while the mother and the father of her out-of-wedlock child "have 'discussed' marriage, but have no definite plans about it."

In reference to criteria number six, it was noted that "[s]ince the divorce, the daughter, Claire [sic] has shown some behavioral problems, including 'seductive' behavior inappropriate for a child her age."

In regards to criteria number nine, the trial court discussed the relationship between the mother and her paramour. The court noted that the boyfriend claimed to have engaged in intercourse only once with the Mother, and that this single act resulted in the conception of their child. The mother, however, refuted this claim, testifying that the two had engaged in intercourse numerous times. The court also addresses other "claims" that the boyfriend made, apparently finding his credibility, after the intercourse comment, to be questionable. Thus the trial court appropriately factored the character of an individual who frequents the home into its comparative fitness analysis.

The court addressed criteria number ten when comparing the Mother's and Father's interactions with the children and noted the fact that "[h]usband has often been on field trips and luncheons sponsored by the childrens'[sic] school, Wife has not been on any field trip and has only had lunch at the school once, allegedly because of her employment." Additionally, the court addresses the Mother's actions of sending the children to Texas rather than allowing the father to take care of them; an act which does not evidence a "willingness and ability of [the Mother] to facilitate and encourage a close and continuing parent-child relationship between the child and the [Father], consistent with the best interest of the child[ren]." Tenn. Code Ann. § 36-6-106(10) (2002).

While we agree with the trial court in that we are unable to "find either parent to be ideal[,]" we do not agree, based on the foregoing findings, with Appellant's contention that the court failed to engage in the required comparative fitness analysis. We are of the opinion, however, that due to the health issues of the children previously discussed, it is necessary that the judgment of the trial court be modified to enjoin Father from smoking in the presence of the children. The order of the trial court is, therefore, so modified.

We note that the emphasis at the trial court level was on the impact that the current custody arrangement was having on the oldest daughter, Clara. Bearing in mind, however, the well established principle that "as a general rule it is not good to separate two small children[,]" *Terry v. Terry*, 361 S.W.2d 500, 504 (Tenn. Ct. App. 1960), and that "[g]enerally speaking, it is not appropriate to separate siblings by a custody order[,]" *Rice v. Rice*, 983 S.W.2d 680, 684 (Tenn. Ct. App. 1998) (citing *Baggett v. Baggett*, 512 S.W.2d 292, 293-94 (Tenn. Ct. App. 1973), we find sufficient evidence in the record to support the change of custody for Sydney also. Accordingly, we affirm the decision of the trial court, as modified, and remand this cause for further proceedings consistent with this opinion. We tax the costs of this appeal to Appellant, Victoria Lynn Barnes, and her surety for which execution, if necessary, may issue.

_____
DAVID R. FARMER, JUDGE