IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 3, 2003

## JEFF LANDOWSKI v. MARLA  LANDOWSKI (COLLINGS)

**Direct Appeal from the Chancery Court for Obion County**
**No. 22,633     W. B. Acree, Jr., Circuit Court Judge, sitting by Interchange**

_____

**No. W2002-01689-COA-R3-CV - Filed June 25, 2003**

_____

Father filed a petition to modify the existing custody agreement.  The trial court granted the petition and named Father as the primary residential custodian with the parties three minor children.  Mother appeals and we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which HOLLY K. LILLARD, J., joined and Alan E. Highers, dissents.

Marla Collings, *Pro se.*

David L. Hamblen, Union City, Tennessee, for the Appellee, Jeff Landowski.

### OPINION

Jeff Landowski (Father) and Marla Landowski (Collings) (Mother) were granted a divorce May 7, 2001.  The parties had three minor children, Brittany, Kayla, and Nathan.  The Marital Dissolution Agreement (MDA) provided that the parties would have joint custody and were to be co-residential parents of the minor children.  Father was to have primary custody of the children five (5) days one week and four (4) days the next and was ordered to pay child support.

Father filed a petition on January 17, 2002, seeking to modify the custody decree and requesting Mother be required to pay a reasonable amount of child support.  Following the trial of this matter on May 29, 2002, the trial court entered an order naming Father as the primary residential custodian of the minor children.  The trial court set visitation for Mother and ordered her to pay child support.  Father's previously ordered child support obligation was terminated.  Mother appeals and raises the following issue for our review:   Whether the trial court erred in finding that a material change in circumstances had occurred which justified a change in custody.

Our review of the trial court's ruling is *de novo* with a presumption of correctness. *See* T.R.A.P. 13(d). Accordingly, we may not reverse these findings unless they are contrary to the preponderance of the evidence. However, with respect to the trial court's legal conclusions, our review is *de novo* with no presumption of correctness. *See Caudill v. Foley*, 21 S.W.3d 203, 206 (Tenn. Ct. App. 1999). The threshold issue to be considered in a custody change is whether a material change in circumstances has occurred since the initial custody determination. *See Placencia v. Placencia*, 48 S.W.3d 732, 736 (Tenn. Ct. App. 2000). As stated recently by our supreme court in *Blair v. Badenhope*, 77 S.W.3d 137 (Tenn. 2002):

> As the Court of Appeals has acknowledged, "[t]here are no hard and fast rules for determining when a child's circumstances have changed sufficiently to warrant a change of his or her custody" *Solima v. Solima*, 7 S.W.3d 30, 32 (Tenn. Ct. App. 1998). Nevertheless, the following factors have formed a sound basis to determine whether such a change has occurred: the change has occurred after the entry of the order sought to be modified and the change is not one that was known or reasonably anticipated when the order was entered, *see Smith v. Haase*, 521 S.W.2d 49, 50 (Tenn. 1975), and the change of circumstances is one that affects the child's well-being in a meaningful way, *Hoalcraft v. Smithson*, 19 S.W.3d 822, 829 (Tenn. Ct. App. 1999).

*Id*. at 150.

The record presented for our review contains a statement of the evidence. A review of the statement of the evidence reveals that a school nurse testified that on one occasion Brittany became very ill at school with a 101 degree fever. The nurse called Mother to pick up the child. Approximately one hour had passed and the mother had still not arrived to pick up the child. The nurse then called Mr. Landowski who arrived immediately and took the child home. Mother testified that she was sick herself that day and therefore did not go immediately to school but arrived some fifteen minutes after Father had picked up the child and called Father to check on the child's condition. The evidence before us does not indicate that Mother informed the nurse that she was ill at the time that she received the call. In fact, the nurse testified that it was her understanding that Mother would be picking the minor child up immediately and that is why she waited as long as she did to call Father. The nurse further testified that on one occasion she had called the Mother to report the poor hygiene of Kayla, stating that her hair was dirty and that she had an odor about her person. On that occasion the nurse sent a note home to Mother detailing the condition of the child.

Kayla's kindergarten teacher described Kayla as a bright but "sad little girl." She testified that Father attended the parent/teacher conference in the spring and Mother attended in the fall. She testified that Father seemed concerned about the child and very interested in her progress at school. She noticed a difference in the child's hygiene and completion of her homework assignments, stating that when she was with Father she was clean, well groomed and had her school work and when she was with Mother she was not as clean and did not bring her work with her, having on many occasions left her backpack at home. She further testified that Kayla was inappropriately dressed

at school, stating that she wore short sleeves and summer attire during the winter and that those were on occasions when Mother had the child with her. In reviewing Mother's testimony, it is noted that Mother did not deny or attempt to rebut the testimony regarding the child's poor hygiene, grooming, completion of homework assignments and arriving at school without her backpack.

Father testified that he had remarried and has a six year old stepdaughter. He described a normal day with his children as coming home from work, helping the children with their homework, he and his wife preparing their supper, giving the children baths and getting them ready for bed. Although Mother was scheduled to have the children an equal amount of time each week, per the divorce decree, he testified that she rarely kept the children and, according to a calendar he kept, the children were with him approximately ninety-five percent (95%) of the time. He testified there were many occasions when Mother promised to pick the children up and visit with them on the weekends and she would either call just before time to pick the children up and cancel or not show up. This was very upsetting to the children. He described several occasions when he picked the children up from school and found that they did not have their backpacks after being with their mother and did not take their homework to school after staying with her. He testified that Mother did not have a loving relationship with the children and there was never any showing of affection between Mother and children.

Father further testified that on numerous occasions he had found a suspicious odor on the children. On one occasion a co-worker, who had worked as a sheriff's deputy, described it as the smell of marijuana on their clothes. He also testified that Mother would bring the children to his workplace when she was supposed to have them so that she could run errands. He described this as causing him difficulty as he had no place to care for the children while at work.

Mother testified that she did not smoke marijuana, that she occasionally smoked cigarettes but not in the presence of the children. A review of her testimony indicates that she did not deny or give any explanation as to Husband's testimony regarding her failure to pick up the children at her allotted time, dropping them off at his workplace when they were supposed to be with her or his description of her relationship with the children. She did testify that one reason the children spent more time with the husband was because of her work schedule but that her schedule had changed.

Having conducted a *de novo* review of this record, the majority concludes that the preponderance of the evidence supports a change of custody and that a change is in the best interest of the minor children. It is always helpful to this Court when the trial courts make specific findings of fact. Otherwise, our review is to determine where the preponderance of the evidence lies without a presumption. *See Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997) (citing *Kemp v. Thurmond*, 521 S.W.2d 806, 808 (Tenn. 1975)). However, it is apparent that the trial court could not have reached its conclusion without crediting the testimony of Father and the witnesses that testified in his behalf. The trial judge, having had the opportunity to observe the witnesses and judge their demeanor is in a better position than this Court to make determinations of credibility. We recognize that there is a strong presumption in favor of an existing custody agreement. *See Hoalcraft v. Smithson*, 19 S.W.3d 822, 828 (Tenn. Ct. App. 1999). However, the record reflects that the parties

were divorced on May 7, 2001, and Father filed his petition some eight (8) months later on January 17, 2002. This matter was heard on May 29, 2002. Therefore, the original custody arrangement had been in place a relatively short period of time.

The judgment of the trial court is affirmed and the costs of this cause are taxed to the Appellant, Marla Landowski (Collings).

 

 

_____
DAVID R. FARMER, JUDGE