IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 21, 2006 Session

## BENJAMIN WINANS v. DEBRA D. WINANS

**Appeal from the Chancery Court for Williamson County**
**No. 26395      Timothy Easter, Judge**

**No. M2004-02566-COA-R3-CV - Filed on June 30, 2006**

Father filed this post-divorce petition seeking a change in custody and a temporary restraining order to prevent Mother from relocating to Texas with the children. Mother responded with a counter petition for relocation and contempt due to Father's failure to timely pay alimony and child support. The trial court denied Mother's request to relocate based on a finding the parties were spending substantially equal time with the children, and it was not in the children's best interest to relocate to Texas. It also denied Father's custody petition, found Father in contempt for failure to pay alimony and child support, and assessed attorney fees against Father. Both parties appeal. Finding the trial court placed too great an emphasis on one factor in denying relocation, we reverse the denial of Mother's petition to relocate. We affirm the trial court in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part and Reversed in Part**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Mary Frances Lyle and Jeffrey L. Levy, Nashville, Tennessee, for the appellant, Debra D. Winans.

John D. Schwalb, Franklin, Tennessee, for the appellee, Benjamin Winans.

### OPINION

Benjamin Winans, Father, and Debra Winans, Mother, were married and had two children. They separated in 1999, when the youngest child was only four months old. Legal proceedings ensued at a slow pace. Father's Petition for Legal Separation was filed in 2001, and the first temporary parenting plan went into effect in February of 2001. The Final Divorce Decree and Parenting Plan were entered on December 15, 2003, when the children were five and eight years old.

The permanent parenting plan gave Mother custody of the children and Father residential time every weekend, except the third weekend of the month. Father also had residential time with the children one or two nights during the week, and the parties split holiday and vacation time.

The children spent Christmas of 2003 with Father and stayed with him into the New Year, during which time Mother traveled to Dallas, Texas, to visit with her brother, a minister. While there, the Agape Christian Fellowship Church approached Mother about filling a permanent position with the church in Texas. The job in Texas allowed Mother to earn considerably more than she had been able to earn in Nashville, and she felt the position in Texas was not only an opportunity to earn more income, but it would also allow her to do work for which she had a passion.[1] Mother accepted the position in Texas without seeking Father's consent or permission of the court to relocate. For the first few weeks, she spent Sunday through Thursday working at the church in Texas, employing a nanny to care for the children while she was away. She would return to Nashville on Thursday or Friday of each week.

On or about February 2, 2004, Mother advised Father at one of their parenting classes about the opportunity in Texas and that she desired to relocate with the children. Because Father traveled considerably, she thought he would approve. Father, however, did not approve. On March 29, 2004, only three months after the entry of the divorce decree, he filed a Petition for a Change in Custody and a Petition for a Temporary Restraining Order to prevent her from relocating with the children. The trial court granted the restraining order pending further proceedings. Mother then filed a petition to relocate to Texas and for civil and criminal contempt against Father, contending he was delinquent with the payment of child support and alimony.

The trial court conducted a hearing on all of the petitions on August 12, 2004. It found the parents spent substantially equal time with the children; however, it also found they actually spent little time with the children due to the fact both parents were frequently absent and used nannies and other caregivers to care for the children. Applying Tenn. Code Ann. § 36-6-108(c) to determine whether to grant or deny the petition to relocate, the trial court denied Mother's Petition to Relocate based on the importance of continuity in the children's lives, which the court stated was the most significant factor. The trial court also denied Father's Petition to Change Custody and found Father delinquent in the payment of child support and alimony, for which he was held in contempt and assessed attorney fees in the amount of $21,137. Both parties appeal.

### STANDARD OF REVIEW

The standard of review of a trial court's findings of fact is de novo, and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). Where the trial court does not make findings of fact, there is no presumption of correctness and we "must conduct our own independent review of the record to

---

[1] Her employment in Nashville had been with Mercy Ministries working with teenage girls, and following her work there, she worked as a self-employed consultant, calling her business "Image and Leadership Development."

-2-

determine where the preponderance of the evidence lies." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999). We also give great weight to a trial court's determinations of credibility of witnesses. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000). Issues of law are reviewed de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

## RELOCATION

Mother contends the trial court erred by denying her petition to relocate with the children to Texas. Her appeal challenges two aspects of the trial court's reasoning. One challenge pertains to the period of time to be considered when deciding whether the parents spent substantially equal time with the children. Mother contends the trial court erred by limiting its review to the eight months following the divorce. She also insists that the trial court placed too great an emphasis on one of the factors under Tenn. Code Ann. § 36-6-108(c), the importance of continuity in the children's lives.

When a divorced parent seeks to relocate with the children, the respective rights of the parents are considered under the statutory scheme outlined in Tenn. Code Ann. § 36-6-108.[2] *See Wilson v. Wilson*, 58 S.W.3d 718 (Tenn. Ct. App. 2001). One of the first considerations is whether the parents spend substantially equal amounts of time with the children. *See* Tenn. Code Ann. § 36-6-108. If the trial court determines the parties are spending substantially equal time with the children, as it did here, then the court must determine whether relocation would be in the best interests of the children.

> Determining whether parents are spending substantially equal amounts of time with their children is, in the first instance, the trial court's prerogative. . . .
>
> Tenn. Code Ann. § 36-6-108 does not define the term "substantially equal." However, no special definition is required because the common meaning of the words and the phrase are easily understood. The word "substantially" means "essentially," "to all intents and purposes," or "in regard to everything material." 17 OXFORD ENGLISH DICTIONARY 68 (2d ed.1989). Thus, the plain meaning of the term "substantially equal" connotes a relationship that is very close to equality-so close that it may be considered equal.

*Roberts v. Roberts*, No. E2005-01175-COA-R3-CV, 2005 WL 2860199, at *4 (Tenn. Ct. App., Oct. 31, 2005)(capitalization in original); see *Collins v. Coode*, No. M2002-02557-COA-R3-CV, 2004 WL 904097, at *3 (Tenn. Ct. App., April 27, 2004).

---

[2]In 1998, our legislature enacted Tennessee Code Annotated section 36-6-108, which applies when a parent seeks to relocate outside the state or more than 100 miles away from the other parent residing within the state. *See Kawatra v. Kawatra*, 182 S.W.3d 800, 802 (Tenn. 2005).

The statutory scheme does not specify the time period to be considered when determining whether the parents spend substantially equal time with the children. This court recommended the use of a twelve-month period to calculate the time the parents spent with the children in *Collins*. *Collins v. Coode*, 2004 WL 904097, at *3.

> When the circumstances permit, courts should use a twelve-month period to determine the amount of time parents are actually spending with their children. Examining the twelve consecutive months immediately preceding the hearing mitigates the skewed statistical results of shorter comparison periods and enables the courts to factor in summer vacations, holidays, and other extended visitation periods that are not evenly distributed throughout the year. However, in cases like this one in which a twelve-month comparison period is not possible or feasible, the courts should use the longest possible period of time.

*Collins,* 2004 WL 904097, at *3.

Just as we have here, the hearing on the Petition to Relocate in *Collins* came less than one year after the date the permanent parenting plan was implemented. When the adoption of the permanent parenting plan is less than twelve–months prior to the hearing on a petition to relocate, the trial court should first determine whether to limit the time frame to the post-divorce era, and thus a shorter time frame, or whether it should consider the pre-divorce era to obtain a twelve-month window.[3] Here, the trial court had eight months to consider post-divorce, and it determined that time frame was sufficient. In *Collins*, the court only considered the six-month post-divorce time frame, which we found appropriate under the circumstances.[4] *Collins,* 2004 WL 904097, at *3. On appeal, we reasoned,

> [T]he dispute regarding Ms. Coode's decision to move to Knoxville arose less than six months following the entry of the divorce decree. Accordingly, the comparison period in this case must necessarily be less than one year. The trial court decided to analyze that period from January 18, 2002 [footnote omitted] through July 30, 2002. [footnote omitted] We have determined that this period is appropriate.

*Collins,* 2004 WL 904097, at *3. Although the comparison period should be the twelve consecutive months immediately preceding the relocation hearing, when circumstances permit, *see Kawatra v. Kawatra,* 182 S.W.3d 800, 804 (Tenn. 2005), we agree with the trial court, as we did in *Collins*, that the post-divorce period is appropriate under the circumstances of this case.

---

[3]When circumstances permit, the comparison period should be the twelve consecutive months immediately preceding the relocation hearing. *Kawatra v. Kawatra,* 182 S.W.3d 800, 804 (Tenn. 2005).

[4]The divorce was granted in January 2002, and the hearing on the Petition to Relocate was held in July 2002.

Determining the actual time the parents spent with the children in this case proved to be problematic due to the fact neither parent spent a substantial amount of time with the children. This was due to the fact Mother was in Texas four days a week and Father, a musician, traveled the country on a regular basis.[5] Instead of being with the children during their respective parenting time, the parents utilized nannies and caregivers who spent substantial amounts of time with the children during the parents' frequent absences.

After considering the more than complex variables, including but not limited to, the frequent use of nannies and caregivers, the trial court concluded the parents spent substantially equal time with the children. Finding the evidence does not preponderate against this finding, we find no error with the trial court's determination that the parties were spending substantially equal amounts of time with the children.

With the trial court's determination the parties are spending substantially equal time with the children, we must determine whether relocation is in the children's best interests. *See* Tenn. Code Ann. § 36-6-108(c). When determining whether it is in the best interests of the children to relocate, the court is to consider the following eleven factors, "where applicable." The factors are:

(1) The extent to which visitation rights have been allowed and exercised;
(2) Whether the primary residential parent, once out of the jurisdiction, is likely to comply with any new visitation arrangement;
(3) The love, affection and emotional ties existing between the parents and child;
(4) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
(5) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;
(6) The stability of the family unit of the parents;
(7) The mental and physical health of the parents;
(8) The home, school and community record of the child;
(9)      (A) The reasonable preference of the child if twelve (12) years of age or older;
         (B) The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;
(10) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; and

---

[5]Father is a member of a prominent musical family and spends a considerable amount of time traveling the country. Both parents employed nannies and caregivers to care for the children when the children were scheduled to be with them. Mother did so when she was in Texas and Father did so when he was traveling.

(11) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child.

Tenn. Code Ann. § 36-6-108(c).

Following a full evidentiary hearing, the trial court stated its analysis of the factors and evidence in its Order of September 29, 2004. It reads:

1. Factor one is the extent to which visitation rights have been allowed and exercised. The visitation rights have been exercised more by Ms. Winans than Mr. Winans, but the actual time, again, was spent in the care of a caregiver as opposed to the Mother.

2. Factor two is whether the primary residential parent, in this case Ms. Winans, once out of the jurisdiction, is likely to comply with any new visitation arrangement. The Court has no reason to believe that the Mother would not comply with any new visitation arrangement.

3. Factor three is the love, affection and emotional ties existing between the parents and children. The Court is convinced based upon the testimony that there is plenty of love and affection and emotional ties that exist between these two children and both of their parents. Both parents love their children, and there is no reason for this Court to find otherwise. It would appear that the children certainly love and have a great deal of affection and emotional ties to their parents.

4. Factor four is the disposition of the parent to provide the child with food clothing, medical care, education and other necessary care, and the degree to which a parent has been the primary caregiver. The Court finds that weighs equally in both parents' favor.

5. Factor five is the importance of continuity in these children's lives and the length of time the children have lived in a stable, satisfactory environment. *The Court believes this factor is controlling here. The Court bases its decision primarily on the importance of continuity in the children's lives. The Court believes it is extremely important to these children that their lives be no more out of the ordinary than it already is because of their parents' station in life.* Moving them to Texas and creating a fly-in father situation for the Father to exercise visitation or requiring him to buy a house there is something the Court believes would only add to the instability of their lives and an environment which is not conducive to nurturing, affection, love and emotional ties. (emphasis added)

6. Factor six is the stability of the family unit of the parents. The Court finds that an interesting factor in this case because the family unit in this case lives such a different type of life than most families.

7. Factor seven is the home, school, and community records of the children. There is no evidence before the Court regarding those issues, other than that the children are enrolled in what appears to the Court to be a good school and that they are doing well there.

8. Factor eight does not really apply.

9. Factor nine does not apply. There is no evidence of physical or emotional abuse to the children.

10. Factor ten does not apply.

11. Factor eleven does not apply.

Based upon the above analysis, the trial court then stated in its Order:

> Having considered all of the factors, the Court, primarily relying on factor five, finds that it would not be in the best interest of the children to allow, at this time, the relocation of [Mother] to Texas. The Mother's petition to relocate to Texas is denied.[6]

The trial court in the case at bar found all factors but one to be equal or inapplicable. The one that weighed against relocating, the factor the trial court found to be controlling, was factor five, "[t]he importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment." Tenn. Code Ann. § 36-6-108(c)(5).

The trial court's concern for continuity in the children's lives was justified, and that factor is indeed very relevant to the issue presented, but we are unable to conclude, as the trial court did, that it is the "controlling" factor. To the contrary we find factor four, a parent's disposition to provide for the children, at least equal to factor five and very adverse to Father.

The trial court found Father in contempt of court for willfully failing to pay child support; yet, the trial court gave this finding no consideration in its best interest analysis. We find the omission of this fact in the best interest analysis significant.

A parent's disposition to provide food, clothing, medical care, education and other necessary care for the children is one of the eleven statutory factors to be considered in a Tenn. Code Ann. 36-6-108(c) best interest analysis. Father's willful failure to pay child support is concrete proof that he is not disposed to provide, at least not on a reliable and continuous basis, food, clothing, medical care, education and other necessary care for the children. Such evidence is significant in a best interest analysis; yet it was not considered. Thus, we have concluded the trial court placed too great an emphasis, indeed all of the weight of the evidence, on factor five.

It is also significant to note that prior to Mother accepting employment and moving to Texas without the children, the children had lived in a relatively stable, satisfactory environment, due in significant part to Mother's presence and the stability she provided. Following her acceptance of

---

[6]Our analysis requires an appreciation of the significant differences in an analysis under Tenn. Code Ann. § 36-6-108(d), where the requesting parent spends substantially more time with the children, and the analysis under Tenn. Code Ann. § 36-6-108(c) presented here. We are faced with a "best interest of the children analysis." Under Tenn. Code Ann. § 36-6-108(d), however, the relocation request shall be approved unless the court finds (1) the move does not have a reasonable purpose, or (2) it poses "a threat of specific and serious harm," or (3) the motive for relocating is vindictive.

employment in Texas, which necessitated her being in Texas at least four nights a week, the children were basically raised and cared for by persons other than their parents; at least a significant portion of their out-of-school time was with nannies and caregivers, not their parents. During the time Mother worked in Texas, the children experienced anything but continuity, unless the continuous use of nannies counts, and their environment, though perhaps stable, was not what we consider satisfactory; the principal unsatisfactory part being the frequent absence of both parents.

Considering the absence of the parents, the trial judge was justified to be mindful of the importance of continuity in the children's lives and that they live in a stable, satisfactory environment, yet the trial court failed to recognize the stability and satisfactory components of the children's lives was due, in principal part, to Mother's involvement in their lives prior to her acceptance of employment out of Nashville. As the trial court correctly found, the children were living in a less than stable and satisfactory environment due to Mother's temporary employment in Texas, the responsibility for which lies at her feet. Nevertheless, but for that period of time, the stability in their lives and the satisfactory environment the children experienced in their five years and eight years, respectively, also lies at her feet.

Indeed, if Mother obtained permission to relocate to Texas with the children, the children would be uprooted; they would leave their home to live in a different one; they would leave their current school to attend a different one, and they would leave their friends with the hope of finding new friends. But such changes, and the almost certain disruption of continuity, also results when the family moves but a few miles, especially when new schools are involved. Children will, to varying degrees, experience adverse consequences when they move, even if they move with their entire nuclear family. The circumstance to be appreciated here is that disruption of continuity will likely occur when a parent moves with the children regardless of the necessity of court approval. Without the permission of Father or the court, Mother could disrupt the continuity by relocating less than one hundred miles from Father, provided she remained in Tennessee. *See* Tenn. Code Ann. § 36-6-108(a). "Moving is a fact of life for many children, those with married parents as well as those whose parents are divorced."[7] *Collins*, 2004 WL 904097, at * 4, n. 14. Thus, continuity is a factor to be considered, but it is not more significant than the other factors, unless family circumstances make it more significant.

Although Father has been a good parent in many respects, when he was available and inclined to fulfill his financial responsibilities, he has also been a parent in absentia for much of the children's lives. Moreover, he has contemptuously failed to pay child support in a consistent and timely manner, a parental irresponsibility that does not foster a stable and satisfactory environment. These are significant factors which must be weighed against Father in the relocation analysis. Moreover, and most significantly, granting Mother permission to relocate with the children will

---

[7] The court went on to explain in *Collins v. Coode*, which involved a Tenn. Code Ann 36-6-108(d)(2) analysis of "specific harm," that "[a]llowing Ms. Coode to move with the children will require them to adapt to a new school and new friends. However, the record shows that these children are bright and well-adjusted, and this adaptation does not constitute a threat of specific and serious harm." *Collins*, 2004 WL 904097, at * 4, n. 14.

-8-

restore the stable and satisfactory environment the children experienced prior to her employment out of state that necessitated her periodic absences.

For these reasons, we must reverse and remand this issue to the trial court with instruction to enter an order granting Mother permission to relocate to Dallas, Texas, provided the same or similar opportunity is still available.

## CHANGE IN CUSTODY

Father petitioned the court to change the custody order so that he, not Mother, would have custody of the children. His reason for wanting custody was Mother's move to Texas with the children. The trial court denied Father's petition for a change of custody because when the court denied Mother's request to relocate, it eliminated Father's grounds for seeking the custody change. Although we have directed the trial court to enter an order granting Mother's request to relocate, our decision does not change the fact Father's petition for change of custody fails to establish an essential element, that a material change of circumstance exists. Thus, we affirm the trial court's decision to deny Father's petition for change of custody.

In considering whether to grant a change in custody, the first issue we must consider is whether there has been a material change in circumstances subsequent to the initial custody determination. *Blair v. Badenhope*, 77 S.W.3d 137, 150 (Tenn. 2002) (citing *Placencia v. Placencia*, 48 S.W.3d 732, 736 (Tenn. Ct. App. 2000)). "A material change of circumstances must be a change in the child's circumstances, and not the circumstances of either or both parents. *Buckles v. Riggs*, 106 S.W.3d 668, 674 (Tenn. Ct. App. 2003) (citing *Hoalcraft v. Smithson*, 19 S.W.3d 822 (Tenn. Ct. App. 1999)). "If the court finds that there has, in fact, been a material change of circumstances, it then seeks to devise a custody arrangement that is in the best interest of the child." *Scott v. Scott*, No. 01A01-9806-CH-00272, 1999 WL 254420, at *2 (Tenn. Ct. App. April 30, 1999) (citing *Varley v. Varley*, 934 S.W.2d 659, 665-66 (Tenn. Ct. App. 1996)).

In *Scott*, the father sought a petition to prohibit the mother's relocation out of state with their children, or in the alternative, he sought a change in custody. These facts are almost identical to those presented in this case. Mother is the primary custodian of the children, and she wishes to move to Texas with the parties' children. Father petitioned the court for a change in custody because Mother wanted to move the children with her to Texas. This court in *Scott*, turned to a Tennessee Supreme Court case that "expressly held that relocation, in and of itself, is not a material change of circumstances sufficient to justify a redetermination of custody." *Scott*, 1999 WL 254420, at *2 (citing *Taylor v. Taylor*, 849 S.W.2d 319, 332 (Tenn. 1993)); *Placencia v. Placencia*, 3 S.W.3d 497, 499 (Tenn. Ct. App. 1999) (citing *Taylor v. Taylor*, 849 S.W.2d 319, 332 (Tenn. 1993)).

There being no proof of a material change in circumstance, we affirm the denial of Father's Petition for a Change in Custody.

The trial court assessed $21,137 of Mother's attorney fees against Father, which assessment Father appeals. Mother requested the assessment of $31,137 against Father. Mother remitted $10,000 of the $31,137 she owed her attorney for representing her in these proceedings. The trial court assessed these fees against Father because of the expense Mother incurred in having to pursue contempt proceedings against Father for his delay in paying child support and alimony.

Tennessee adheres to the "American Rule," which provides, absent a statute or agreement to the contrary, litigants are responsible for their own attorney fees. *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000). There is no absolute right to recover attorney fees, but their award in support proceedings is almost commonplace. *Deas v. Deas*, 774 S.W.2d 167, 170 (Tenn. 1989). The custodial parent may recover from the other parent reasonable attorney fees incurred in a proceeding involving the enforcement of a child support obligation. *See* Tenn. Code Ann. § 36-5-103; *see also Eldridge v. Eldridge*, 137 S.W.3d 1, 24 (Tenn. Ct. App. 2002). A parent, however, is not entitled to recover attorney fees in an action involving the proposed relocation of a parent with the parties' children. *See Mitchell v. Mitchell*, No. M2004-00849-COA-R3-CV, 2005 WL 1521850, *5 (Tenn. Ct. App. June 27, 2005) (holding the relocation statute, Tenn.Code Ann. § 36-6-108, contains no provision for the recovery of attorney fees and finding no error with the trial court holding each party accountable for their own attorney fees).[8] Thus, Mother is not entitled to recover fees incurred relative to the relocation proceedings, but she may be entitled to recover fees necessitated by Father's alleged contemptuous failure to timely and consistently pay child support.

"The allowance of attorney's fees is largely within the discretion of the trial court, and we will not interfere except upon a clear showing of abuse of that discretion." *Smith v. Smith*, 984 S.W.2d 606, 610 (Tenn. Ct. App. 1997) (citing *Storey v. Storey*, 835 S.W.2d 593, 597 (Tenn. Ct. App. 1992)); *see also Eldridge*, 137 S.W.3d at 24 (holding the decision to award attorneys fees and the amount of those fees awarded is a matter resting within the sound discretion of the trial court).

The trial court found Father in contempt due to his failure to timely and consistently pay child support. This finding entitles Mother to recover reasonable and necessary attorney fees incurred to enforce payment of his child support obligations. Mother requested $31,137 be assessed against Father. The trial court pared that down to $21,137. Finding no abuse of discretion in the award of attorney fees, we therefore affirm the award of attorney fees against Father.

Mother also seeks to recover her attorney fees incurred on appeal. The decision whether to award attorney fees on appeal rests in the sound discretion of this court. *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995). Finding an award of attorney fees incurred on appeal is

---

[8]Mother contended she was entitled to recover her attorney fees at trial and on appeal. She based this contention on Tenn. Code Ann. § 36-5-103(c). On appeal, we found her reliance on that statute misplaced, noting that Tenn. Code Ann. § 36-5-103(c) pertains to child custody issues, which are distinct from relocation issues. *Mitchell*, 2005 WL 1521850, * 5. (citation omitted)

warranted, we remand this issue to the trial court to award Mother reasonable attorney fees incurred on appeal.

## IN CONCLUSION

The judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded with instruction for the trial court to approve Mother's request to relocate to Dallas, Texas, provided the move is still viable, and to award Mother reasonable attorney fees incurred on appeal. Costs of appeal are assessed against Father.

_____
FRANK G. CLEMENT, JR., JUDGE