# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### MAY 23, 2007 Session

## THOMAS JEFFERY EDGEWORTH v. STACY BRAWLEY EDGEWORTH

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-03-0826-I     Walter L. Evans, Chancellor**

---

**No. W2006-01813-COA-R3-CV - Filed August 23, 2007**

---

The parents, who have three minor sons, were divorced in 2003, and they entered an agreed parenting plan whereby the mother was designated the primary residential parent and the father was ordered to pay child support. The father experienced an increase in income the following year, and the mother petitioned the chancery court for an increase in his child support obligation, to which the father agreed. In early 2006, the father left his job for a similar job with his stepfather and brother which provided him with less income. The father petitioned the chancery court for a downward modification of his child support obligation, citing his decreased income. The mother then sent the father a notice of her intent to relocate from Memphis to Franklin, Tennessee, because of an employment opportunity. After hearings, the chancery court denied the mother's petition for relocation. The chancery court instructed the parties' attorneys to calculate child support according to the Tennessee Child Support Guidelines using income amounts that it had imputed to the mother and father, and without providing any basis as to how it had determined these figures. At a later hearing, the chancery court set a child support amount in excess of what the parties had determined according to the Tennessee Child Support Guidelines, which amount was ordered to include the father's contribution to the children's private school tuition. The chancery court did not include the child support worksheets in its order, nor did it provide written findings supporting its decision to deviate. We reverse and remand for further proceedings.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and DAVID G. HAYES, SP.J., joined.

Mitchell D. Moskovitz, Jason A. Creech, Memphis, TN, for Appellant

Rachael Emily Putnam, Kay Farese Turner, Memphis, TN, for Appellee

## OPINION

### I. FACTS AND PROCEDURAL HISTORY

This appeal arises from the denial of a mother's petition to relocate from Memphis to the Nashville area, and the modification of a father's monthly child support obligation. Stacey Edgeworth ("Mother") and Jeffrey Edgeworth ("Father") were divorced by final decree of the Chancery Court of Shelby County entered on July 28, 2003. The parties, who had three minor sons, reached an agreement as to custody of the children as reflected in the permanent parenting plan incorporated by the divorce decree. According to the parenting plan, Mother was designated the children's primary residential parent, and Father was allowed parenting time every other weekend from Friday afternoon to Monday morning, every Tuesday night to Wednesday morning, two weeks during the summer, one week during winter vacation, and alternating holidays. Father's monthly child support was set at $3,450 per month, based upon his monthly income of $12,050 at Lane Furniture. Mother later petitioned the court for an increase in child support based upon Father's increased income in 2004, and a consent order was entered on October 15, 2004, by which Father agreed to pay $4,100 per month beginning September 1, 2004, based upon his monthly income of $14,950 at Lane Furniture.

On January 17, 2006, Father petitioned the chancery court in order to modify the previous order and decrease his child support obligation based upon what he alleged to be a material change in circumstances related to his employment. Father stated that he had changed jobs "due to forces beyond his control," and that his monthly income was now approximately $8,500 at Ashley Furniture. Father requested a modification of the support order consistent with the Tennessee Child Support Guidelines. Mother responded to the petition on February 2, 2006, and she sent Father a notice of her intent to relocate with the children to Franklin, Tennessee, alleging that her employer was phasing out business in Memphis and that a higher paying employment opportunity existed in the Nashville area. Father responded in opposition to Mother's proposed relocation and further petitioned the court for a modification of the parenting plan and temporary injunctive relief. Father contended that he had exercised all parenting time with the children as provided by the plan, as well as additional time through his involvement with the boys' extracurricular activities, to the extent that the parties were spending "substantially equal" time with the children. Father argued that the parties' middle child had a medical condition that was being treated at Campbell Clinic in Memphis and that Mother's relocation would be detrimental to the child. Father additionally requested designation by the court as the children's primary residential parent. Mother responded that Vanderbilt University Medical Center in Nashville employed doctors who specialized in the middle child's condition, and that the relocation would therefore have no negative impact on the child. Mother also counter-petitioned the court for a modification of the parenting plan based upon relocation. Mother filed a motion to dismiss Father's petition to decrease support, alleging that he was voluntarily underemployed.

On May 4, 2006, Father's petition to modify the child support award was heard by the divorce referee, who found that Father was voluntarily underemployed and dismissed his petition.

On May 9, Father appealed the referee's ruling to the chancery court, pursuant to Rule 12 of the Local Rules of Chancery. Mother filed a memorandum of law with the chancery court in support of her petition for relocation, which she supported by attaching several exhibits purportedly demonstrating an existing broker-salesperson contract, commission agreement, and salary agreement with The Oxford Company, in Franklin, Tennessee.

The trial court held hearings on June 19 and 20, 2006. Mother testified that she had been in the business of real estate sales as an independent contractor with The Oxford Company in Memphis for approximately twelve years. She primarily sold homes that were newly constructed by Riverbirch Homes of Memphis. She testified that, in 2004, Riverbirch of Memphis began to sell its lots and curtail its construction of new homes, and she offered her tax returns from years 2003 to 2005 into evidence in support of her testimony that her income was drastically reduced as a result. Reggie Garner, Mother's boyfriend and the current co-owner of The Oxford Company and Riverbirch Homes of Nashville, testified that the building and selling of homes in Memphis had been phased out so that the company could focus on building and selling Riverbirch homes in subdivisions in the Nashville area, which he described as "a hot market[.]" Both Mother and Mr. Garner testified that Mother had been offered a $70,000 base income sales position with The Oxford Company/Riverbirch of Nashville, and Mother offered a contract into evidence demonstrating this offer in support of her petition to relocate to Franklin, Tennessee. Mr. Garner provided competent testimony as to Mother's substantial expertise at real estate sales, and he stated that, even if his and Mother's romantic relationship did not endure, that he believed she would continue to work for the company.

Father testified at length regarding his decision to change jobs, from Lane Furniture to Ashley Furniture, in late 2005 and early 2006. Father testified that he began working as a sales representative for Lane Furniture in 1993. He stated that his income increased steadily from 2000 until 2004. Father testified that in 2004, his stepfather had gone into business with Ashley Furniture, a business with which Lane Furniture competed. Father testified that by 2005, he had lost several major sales accounts, resulting in decreased income each month of that year, and that he was faced with the difficult situation of selling against his stepfather and his younger brother, who had also begun working at Ashley Furniture. Father testified that his stepfather approached him in September of 2005 to discuss the prospect of Father working for Ashley Furniture for less money. Upon questioning by counsel, Father stated his reasons for ultimately deciding to leave Lane Furniture to work for Ashley Furniture in January of 2006:

> Q. In light of the decrease in income you were making at Lane Furniture, was the decrease that you were going to suffer going to work for your stepfather going to be significant?
>
> A. No. It wasn't going to be significant after all of my expenses. I mean, I was a statutory employee. So my expenses taking people to lunch, traveling and all of that and market [attendance] is [sic] very costly. . . And with a salaried job with my father, I knew exactly what I was going to be

making. It was just stability for me. I was tired of living month to month with unstable income.

At the conclusion of this hearing, the trial court stated its findings regarding Mother's petition to relocate and Father's appeal of the divorce referee's ruling on child support modification:

> In this particular case, we have Edgeworth versus Edgeworth, the petition by Mrs. Edgeworth to relocate to Nashville based on an increased financial opportunity with the Oxford [C]ompany and the Riverbirch Homes of Nashville which is in the process of developing these two or three new subdivisions in which they are building homes in excess of $450,000.
>
> And Mr. Reggie Gardner [sic] is one of the owners of those companies along with Mr. Kevin Hine, and they have agreed to pay Mrs. Edgeworth a guaranteed draw of $70,000 a year against the commissions that she would earn for her efforts in selling the properties through the Oxford [C]ompany. Everybody seems to feel that her expected income would be well in excess of the $70,000, and she would be very appreciative of the increased income which everybody anticipates that she would receive.
>
> The only – there is no other legitimate or persuasive reason for the relocation except the monetary benefits that Ms. Edgeworth feels that she would receive. And things do happen. It is possible that the relationship between Mrs. Edgeworth and Mr. Reggie Gardner [sic] may remain the same. It may get better. It may get worse. But Mr. Gardner [feels] that notwithstanding the relationship between Mrs. Edgeworth and himself that because of her expertise, her experience, her persuasive record of producing results, that she would nevertheless still earn substantial monies by the relocation.
>
> On the other hand, Mr. Edgeworth feels that to deny – that such a move with these children would deny him the opportunity to bond with these children as he has done in the past and intends to continue in the future.
>
> There is no question in the Court's mind that both of these parents love these children and want to do what is in the best interest of the children. And the Court in looking at all the proof and evidence feels that if these children are relocated to Nashville that it would provide a very serious disruption in their present state of affairs where they have become familiar with the Memphis [and] Shelby County area, where they have a number of support persons here, grandparents and relatives, and where they are doing excellent work in school.
>
> They have classmates and friends that they have become familiar with, and the Court is of the opinion that to relocate these

children to Nashville at this time would be too disruptive for the Court to approve such a relocation. That does not mean that – Mrs. Edgeworth, if she chooses to, can move wherever she so desires, but it appears as though based on her attorney's statement that she has no intentions of leaving these children here and she being a primary resident – or living somewhere else.

So, in a nutshell, what the Court is going to do is deny the petition of Mrs. Edgeworth to relocate to Nashville with these children. The Court will also deny Mr. Edgeworth's petition to change the parenting – the allocation of parenting time as set forth in the original permanent parenting plan and would reinstate that as the appropriate arrangement that should continue to exist between these parties where Mrs. Edgeworth still retains the designation of primary residential custodial parent.

Regarding the appeal from the referee's ruling, the Court is of the opinion that when Mr. Edgeworth did leave the Lane Furniture Company, as the referee determined, he voluntarily became underemployed. But the Court does not find that his underemployment was due to the reason of trying to avoid his obligation under the – to support his children, but for reasons of wanting to provide support to his stepfather or to his father and his family members in the development of their Ashley Furniture Store operations. But nevertheless, it was a voluntary underemployment decision by him.

But what the referee did not do is consider the fact that Mr. Edgeworth's income has been reduced from what it was in 19 – in 2004. And for purposes of computing the new income – I'm sorry, the new child support, the Court will allow a modification of his child support obligation based on the current guidelines which the attorneys will compute. And for purposes of determining the child support, the Court is recommending an income figure of $156,000 for Mr. Edgeworth and $60,000 for Mrs. Edgeworth.

And on the issue of the exact amount of child support and the matter involving private school tuition, that will be reserved until July the 5th after the attorneys have put their figures together and came up [sic] with a computation as to how much the child support will be.

Now, the Court has indicated that a figure somewhere in the neighborhood of $3,434.50 [sic], which was the original amount of child support, should be the approximate range that the ultimate child support should be if it is determined based on the current guidelines that the amount will be less. And in that case, there should be or could be an upward deviation in the amount of child support that Mr. Edgeworth would be paying from whatever the guideline figure is.

The Court presented its ruling in an order entered August 1, 2006. Father's support amount was set at $3,450 per month pending the court's final determination. Mother filed a notice of appeal of this order.

Another hearing was held on August 14, at which the chancery court ordered that Father's monthly support obligation was to be set at $3,450, which was to include "any amount of contribution [by Father] towards the [children's] private school tuition." This ruling was entered by order on September 15, 2006, and Father's support of $3,450 per month was made retroactive to January of 2006. Mother amended her previous notice of appeal to encompass this ruling, and Father also filed a notice of appeal. Father also filed a motion to alter or amend judgment in which he requested a modification of the parenting plan to grant him joint decisionmaking authority as to educational decisions regarding the children. After hearing Father's motion, the court entered an order on September 26, 2006, requiring Mother to consult with Father regarding educational decisions, and in the event of a dispute, that the parties be required to seek mediation for achieving resolution of that issue.

## II. ISSUES PRESENTED

The issues presented to this Court on appeal are as follows:

1.     Whether the trial court erred by denying Mother's petition for relocation.
2.     Whether the trial court erred in its modification of Father's monthly child support obligation from $4100 to $3450.
3.     Whether Mother is entitled to an award of reasonable attorneys' fees incurred as a result of this appeal.

For the following reasons, we reverse the judgment of the chancery court and remand for further proceedings.

## III. STANDARD OF REVIEW

On appeal, a trial court's factual findings are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d) (2006); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

The weight, faith and credit to be given to any witness's testimony lies in the first instance with the trier of fact. ***Koch v. Koch***, 874 S.W.2d 571, 577 (Tenn. Ct. App. 1993). The credibility accorded will be given great weight by the appellate court. ***Id.*** (citing ***Town of Alamo v. Forcum-James Co.***, 205 Tenn. 478, 327 S.W.2d 47 (1959); ***Sisk v. Valley Forge Ins. Co.***, 640 S.W.2d 844 (Tenn.App.1982)).

## IV. DISCUSSION

### A. Mother's Petition to Relocate

In 1998, the Tennessee legislature enacted the parental relocation statute, Tennessee Code Annotated § 36-6-108, which sets out the framework for courts to determine whether to permit the primary residential parent to relocate with the child, or children, outside Tennessee or more than 100 miles away inside Tennessee. *See* ***Rogers v. Rogers***, No. W2006-00858-COA-R3-CV, 2007 Tenn. App. LEXIS 407, at \*16 (Tenn. Ct. App. July 3, 2007). The first issue that we must decide is whether the trial court committed error in denying Mother's petition to relocate with the three minor children to the Nashville, Tennessee area based upon the statutory factors set forth at Tenn. Code Ann. § 36-6-108(c) and (d). These subsections provide in part:

> (c) *If the parents are actually spending substantially equal intervals of time with the child* and the relocating parent seeks to move with the child, the other parent may, within thirty (30) days of receipt and notice, file a petition in opposition to removal of the child. *No presumption in favor of or against the request to relocate with the child shall arise. The court shall determine whether or not to permit relocation of the child based upon the best interests of the child. The court shall consider all relevant factors including the following where applicable:*
>> (1) The extent to which visitation rights have been allowed and exercised;
>> (2) Whether the primary residential parent, once out of the jurisdiction, is likely to comply with any new visitation arrangement;
>> (3) The love, affection and emotional ties existing between the parents and child;
>> (4) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
>> (5) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;
>> (6) The stability of the family unit of the parents;
>> (7) The mental and physical health of the parents;
>> (8) The home, school and community record of the child;

(9)(A) The reasonable preference of the child if twelve (12) years of age or older;

(B) The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of the younger children;

(10) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; and

(11) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child.

(d)(1) *If the parents are not actually spending substantially equal intervals of time with the child* and the parent spending the greater amount of time with the child proposes to relocate with the child, the other parent may, within thirty (30) days of receipt and notice, file a petition in opposition to removal of the child. The other parent may not attempt to relocate with the child unless expressly authorized to do so by the court pursuant to a change of custody or primary custodial responsibility. *The parent spending the greater amount of time with the child shall be permitted to relocate with the child unless the court finds:* [1]

(A) The relocation does not have a reasonable purpose;

(B) The relocation would pose a threat of specific and serious harm to the child that outweighs the threat of harm to the child of a change in custody; or

(C) The parent's motive for relocating with the child is vindictive in that it is intended to defeat or deter visitation rights of the non-custodial parent or the parent spending less time with the child.

Tenn. Code Ann. § 36-6-108(c)–(d)(1) (2005) (emphasis added). The statute clearly indicates that different factors are to be applied by the trial court in its consideration of a petition to relocate, depending upon whether "the parents are actually spending substantially equal intervals of time with the child[ren.]" As explained by this Court in ***Connell v. Connell***, No. 03A01-9808-CV-00282, 2000 WL 122204, at *3 (Tenn. Ct. App. Jan. 25, 2000):

> In cases of parents who spend substantially equal time with their children, a court simply applies the familiar best interest analysis to determine whether a parent may remove the child. If the time spent

---

[1]The statute further provides that "[i]f the court finds one (1) or more of the grounds designated in subsection (d), the court shall determine whether or not to permit relocation of the child based on the best interest of the child." Tenn. Code Ann. § 36-6-108(e) (2005).

is not substantially equal, one of the following must be established before a court engages in a best interest analysis: (1) there is no reasonable purpose for the relocation; (2) the relocation poses a threat of specific, serious harm to the child; or (3) the parent's motive for the relocation is vindictive, as that concept is defined in the statute. If none of the grounds is found, the custodial parent is permitted to move with the children.

In *Placencia v. Placencia*, 48 S.W.3d 732 (Tenn. Ct. App. 2000), the second appeal of a custody case, this Court was faced with a trial court's refusal to hold an evidentiary hearing on a mother's allegation of a change in circumstances supporting her petition for change of custody, which she had filed in opposition to a father's petition to relocate with the minor child. The father argued that on the previous appeal of the case, regarding the issue of changed circumstances, that "both [the trial and appellate] courts addressed the relocation by implication in addressing the issue of custody." *Id.* at 735. We disagreed, stating that "the issues involved in allowing a custodial parent to relocate with a child are too important to leave to 'implication.'" *Id.* In the majority opinion, Judge Crawford recognized that the mother held a right to be heard on the issue of whether relocation was appropriate. *Id.* at 734. The majority opinion applied Tenn. Code Ann. § 36-6-108(d), governing situations in which the parents are not spending substantially equal amounts of time with the children, to the facts of the case. *Id.* at 735. We recognized that, in such a case, the parent spending the greater amount of time with the child shall be permitted to relocate with the child unless the court finds that the relocation does not have a reasonable purpose, the relocation would pose a threat of specific and serious harm to the child, or the parent's motive for relocating is vindictive. *Id.* (citing Tenn. Code Ann. § 36-6-108(d) (Supp. 2000)). Although we had determined in the first appeal that the father's motive for relocation was not vindictive, in the second appeal we noted that the other two factors were never explicitly addressed by the trial court, stating:

> T.C.A. § 36-6-108(d) does not appear to require specific findings as to the three elements listed above, and we have found no Tennessee case which directly addresses whether such findings are required. However, given the fundamental nature of the interests involved, we hold that the trial court ruling should have at least addressed the issues of 'reasonable purpose' and 'specific and serious harm' in its opinion in this matter.

*Id.* at 735-36. We vacated the order of the trial court and remanded for a hearing on the issue of relocation. *Id.* at 736.

In *Placencia*, Judge Kirby filed a separate concurring opinion in which she noted that it was unclear from the record whether the trial court's hearing on relocation would have been pursuant to T.C.A. § 36-6-108(d), where the parents are not spending substantially equal parenting time, or § 36-6-108(c), which governs a situation where the parents are spending substantially equal intervals of time with the child. *Id.* at 736-37. She explained that throughout the proceedings of the case, the

parent with whom the child primarily resided had changed more than once, and that under those circumstances, it was unclear which subsection of § 36-6-108 applied. *Id.* at 737. Judge Kirby stated, "[t]herefore, on remand, the trial court must make a factual determination of whether [the child] has been residing primarily with Father during the pertinent time period (undefined in the statute), or whether [the child] has actually spent substantially equal time with both parents." *Id.*

In *Collins v. Goode*, No. M2002-02557-COA-R3-CV, 2004 WL 904097, at *3 (Tenn. Ct. App. Apr. 27, 2004), the Middle Section of this Court noted that "[t]he courts have not provided bright-line rules for determining whether parents are spending "substantially equal" custodial time with their children." We perceived no need to adopt such a "bright-line rule . . . because custody decisions, by their very nature, are inherently fact-dependent." *Id.* However, we expressed that trial courts should base this determination on factors such as (1) the terms of the applicable custody and visitation orders, (2) the number of days each parent has actually spent with the child or children, (3) whether the parents are using the full amount of residential time provided them, (4) the length of the period during which the comparison of residential time is being made, and (5) the particular exigencies of the parent's circumstances. *Id.* This Court recognized the difficulty in reconciling prior decisions construing "substantially equal" as used in the statutory provision. *Id.* at n. 8 (*citing, e.g.*, *Branham v. Branham*, No. E2003-01253-COA-R3-CV, 2004 WL 716729, at *3 (Tenn. Ct. App. Apr. 2, 2004); *Connell v. Connell*, No. E1998-00731-COA-R3-CV, 2000 WL 122204, at *3-4 (Tenn. Ct. App. Jan. 25, 2000) (finding that a 60%-40% split of custodial time was not substantially equal); *Monroe v. Robinson*, No. M2001-02218-COA-R3-CV, 2003 WL 132463, at *4 (Tenn. Ct. App. Jan. 16, 2003) (finding that a 57%-43% split was substantially equal); *Woolman v. Woolman*, No. M2000-02346-COA-R3-CV, 2001 WL 1660714, at *5 (Tenn. Ct. App. Dec. 28, 2001) (finding that a 65%-35% split was substantially equal).

In *Kawatra v. Kawatra*, 182 S.W.3d 800 (Tenn. 2005), the Tennessee Supreme Court construed the meaning of "substantially equal" as used by Tenn. Code Ann. § 36-6-108(c) and (d). The Court noted that "[t]he statute requires the trial court to determine whether the parents are 'actually spending substantially equal intervals of time with the child.'" *Id.* at 802. The Court went on to state:

> To determine the number of days to credit to each parent for purposes of Tennessee Code Annotated section 36-6-108(c) and (d), the trial court should first examine the provisions of the residential schedule. The trial court should then consider additional time each parent spent with the child that is not reflected in the residential schedule. If either parent violated the terms of the residential schedule by interfering with the other parent's time with the child, the trial court should make any necessary adjustments to reflect the time that the child should have been in the care of the other parent. To allocate a day to one parent when both parents claim credit for that day, the trial court should examine 1) the hours each parent actually spent with the child on that day; 2) the activities in which each parent

engaged with the child; 3) the resources the parent expended on the child's behalf during that time period, including the costs of a meal or any other costs directly related to that parent's care and supervision of the child; and 4) any other factor that the trial court deems relevant. (footnotes omitted)

After computing the number of days allocated to each parent, the trial court must determine the number of months to use in comparing the time that each parent spent with the child. The use of a short computation period may exaggerate the difference in the amount of time that each parent is spending with the child. We therefore conclude that, when circumstances permit, the comparison period should be the twelve consecutive months immediately preceding the relocation hearing.

*Id.* at 803-04.

In this case, the trial court never indicated its finding as to whether or not the minor children were "actually spending a substantially equal amount of time" with Mother and Father.[2] It is unclear both from the technical record and the transcript of the hearings held on June 19 and 20, 2006, whether the decision to deny Mother's petition for relocation was based upon an application of Tenn. Code Ann. § 36-6-108(c), or subsection (d). Furthermore, rather than apply the statutory factors set forth in either of these subsections, the trial court based its decision to deny Mother's petition for relocation on its finding that the relocation would be "disruptive" to the boys' current lives in Memphis. We believe that a remand is required so that the trial court may hold additional proceedings, if necessary, in order to determine the threshold issue of whether Tenn. Code Ann. § 36-6-108(c) or (d) applies, and to reconsider Mother's petition based upon the applicable factors provided therein. Therefore, we reverse the trial court's denial of Mother's petition to relocate, and remand to the chancery court for this purpose.

### *B. Modification of Father's Child Support Obligation*

Both parties allege error with the trial court's modification of Father's previous child support obligation of $4100 per month to $3450 per month. Mother argues that the trial court erred by granting Father's petition to reduce child support. She contends that first, the court failed to apply the Tennessee Child Support Guidelines in making its decision. Second, she argues that the court

---

[2]This issue was disputed at the hearing. Mother, the primary residential parent under the parenting plan, testified that, in her opinion, she and Father did not spend a substantially equal amount of time with the children. Father claimed that he exercised 145 days of parenting time with the children in 2005, as provided by the residential schedule in the parenting plan, but that, considering the additional time he spent with the children with their sporting events and other extracurricular activities, he believed that he and Mother were spending substantially equal amounts of time with the children.

erred by modifying the support amount where no "significant variance" existed as to Father's income. She submits that the amount of income the trial court imputed to Father in modifying the child support, $156,000, is not supported by the evidence, and that the trial court provided no basis for its calculations in this regard. Mother also argues, based upon the same considerations, that the trial court erred by imputing $60,000 of income to Mother for its calculation of child support. Finally, Mother contends that the court erred by not applying the "hardship provision" of the Tennessee Child Support Guidelines in this case.

Father similarly takes issue with aspects of the trial court's ruling on the modification of child support. Father submits that the court correctly found that he was entitled to a modification of the support amount based upon a significant variance in his income, from the period in which he last worked at Lane Furniture in 2005 to the time when he began working with his stepfather at Ashley Furniture in 2006. He contends that the court correctly imputed income to Mother based upon an average of her income from 2003 to 2005. Citing the parties' mutual desire that the children continue attending private school, Father argues that an upward deviation from the amount of support due under the Tennessee Child Support Guidelines was appropriate, however, he submits that the trial court erred by not making specific written findings regarding such deviations from the amount of support due pursuant to the guidelines.

The parties do not dispute that the modification of child support at issue is governed by the "income shares" model of the Tennessee Child Support Guidelines ("the Guidelines"), amendments to which most recently took effect on June 26, 2006. The Guidelines provide:

> (1) Required Forms.
> (a) These rules contain a Child Support Worksheet, a Credit Worksheet, Instructions for both Worksheets, and the Child Support Schedule which shall be required to implement the child support order determination.
> (b) The use of the Worksheets promulgated by the Department is mandatory in order to ensure uniformity in the calculation of child support awards pursuant to the rules.
> . . .
> (e) The completed Worksheets must be maintained as part of the official record either by filing them as exhibits in the tribunal's file or as attachments to the order.
> (f) Any child support obligation determined by the calculations made using the Department Worksheets shall also be reflected in the tribunal's order, together with a description of any additional expenses the parent is to pay as part of the child's support as well as any deviations from the presumptive child support order.

Tenn. Comp. R. & Regs. 1240-2-4-.04 (2006).[3]

Under the Guidelines, in order for a child support order to be eligible for modification, a significant variance must exist. Tenn. Comp. R. & Regs. 1240-2-4-.05(2)(a) (2006). The guidelines provide several alternative definitions for "significant variance." The definition of "significant variance" applicable in this case, since the October 2004 order increasing child support to $4100 per month was calculated under the flat percentage guidelines, is "[a]t least a fifteen (15%) change in the gross income of the [alternative residential parent] . . . ." *See* Tenn. Comp. R. & Regs. 1240-2-4-.05(2)(b) (2006). If a child support modification is justified, the tribunal is directed to increase or decrease the support order as appropriate in accordance with the Guidelines. Tenn. Comp. R. & Regs. 1240-2-4-.05(5). Calculation under the Guidelines is to be performed by completing the worksheets provided by the Tennessee Department of Human Services:

> The Child Support Worksheet and Credit Worksheet provided by the Department are mandatory for use in calculating the appropriate child support obligation under these Guidelines. The completed Worksheet(s) must be maintained as part of the official record either by filing them as exhibits in the tribunal's file or as attachments to the order.

Tenn. Comp. R. & Regs. 1240-2-4-.08(1)(a) (2006); *see also* Tenn. Comp. R. & Regs. 1240-2-4-.04(1)(b) (2006) ("The use of the Worksheets promulgated by the Department is mandatory in order to ensure uniformity in the calculation of child support awards pursuant to the rules.").

Regarding deviations from the presumptive child support, the Guidelines provide:
> (1) Consideration of the Child's Best Interests; Written Findings to Support the Deviation.
>
>     (a) The amounts of support established by these Guidelines are rebuttable.

---

[3] *See also* Tenn. Code Ann. § 36-5-101(e)(1)(A) (2005), providing:

> In making the court's determination concerning the amount of support of any minor child or children of the parties, the court shall apply, as a rebuttable presumption, the child support guidelines, as provided in this subsection (e). If the court finds that evidence is sufficient to rebut this presumption, the court shall make a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child or children, or the equity between the parties. Findings that the application of the guidelines would be unjust or inappropriate shall state the amount of support that would have been ordered under the child support guidelines and a justification for the variance from the guidelines.

(b) The tribunal may order as a deviation an amount of support different from the amount of the presumptive child support order if the deviation complies with the requirements of this paragraph (1) and with this chapter. The amount or method of such deviation is within the discretion of the tribunal provided, however, the tribunal must state in its order the basis for the deviation and the amount the child support order would have been without the deviation. In deviating from the Guidelines, primary consideration must be given to the best interest of the child for whom support under these Guidelines is being determined.

One basis for deviation from the guidelines may be when extraordinary educational expenses, which may include tuition and other expenses associated with private schooling, are involved. *See* Tenn. Comp. R. & Regs. 1240-2-4-.07(2) (2006). In such a case, these expenses may be added to the presumptive child support as a deviation, and the Guidelines require that a monthly average of these expenses be based on evidence of prior or anticipated expenses and entered in the worksheets in the deviation section. Tenn. Comp. R. & Regs. 1240-2-4-.07(2)(d)(1)(i)–(iii).

In the October 2004 order, Father's gross income was determined to be $14,950 per month, and his child support obligation was increased from $3450 per month to $4100 per month. Father sought modification of this order after changing jobs, from Lane Furniture to Ashley Furniture, in January of 2006. Father's income tax return from 2005, the last year in which he worked for Lane Furniture, reflected a gross income of $153,919, or $12,826 per month. Father submitted that his gross monthly income at Ashley Furniture, where he began working in January of 2006, was approximately $8500 per month. As to Father's changing jobs, and his motivations for doing so, the trial court found:

Regarding the appeal from the referee's ruling, the Court is of the opinion that when Mr. Edgeworth did leave the Lane Furniture Company, as the referee determined, he voluntarily became underemployed. But the Court does not find that his underemployment was due to the reason of trying to avoid his obligation under the – to support his children, but for reasons of wanting to provide support to his stepfather or to his father and his family members in the development of their Ashley Furniture Store operations. But nevertheless, it was a voluntary underemployment decision by him.

The trial court imputed income of $156,000 ($13,000 per month) to Father, but provided no mathematical basis for its calculations.

The Guidelines provide that a court may impute additional gross income if a parent has been found to be willfully and/or voluntarily underemployed or unemployed, when there is no reliable

-14-

evidence of income, or when the parent owns substantial non-income producing assets. Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(2)(i) (2006). Our review of a trial court's finding of willful or voluntary underemployment was recited by this Court in **Demers v. Demers**, 149 S.W.3d 61, 71-72 (Tenn. Ct. App. 2003):

> [D]etermining whether an obligor parent is willfully underemployed "is a fact-driven inquiry requiring careful consideration of all the attendant circumstances." . . . In making such a determination, "the Court is required to consider the obligor's education and prior work experience." . . . In addition, the Court considers the parent obligor's reason for accepting the lower paying position to determine whether the decision was made in good faith. . . "Obligor parents should not be permitted to avoid their child support obligations by liquidating their businesses, by quitting work, or by taking lower paying jobs. . . . Accordingly, the courts must scrutinize the reasons for the obligor parent's career decision . . . and the reasonableness of his or her ultimate career choice.". . . .

(citations omitted).[4]

We believe that the trial court erred in finding that Father was voluntarily underemployed. We recognize the following provision of the Guidelines: "A determination of willful and/or voluntary under or unemployment is not limited to occupational choices motivated only by an intent to avoid or reduce the payment of child support. The determination may be based upon any intentional choice that affects a parent's income." Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(2)(ii)(I) (2006). However, we also note a prior holding of this Court that "if a parent's reasons for working in a lower paying job are reasonable and in good faith, the court will not find him or her to be willfully and voluntarily underemployed." **Richardson v. Spanos**, 189 S.W.3d 720, 726 (Tenn. Ct. App. 2005) (citing **Willis v. Willis**, 62 S.W.3d 735, 738 (Tenn. Ct. App. 2001)). Furthermore, in *Wilson v. Wilson*, we held that "[a]lthough there is no requirement that a parent intended to avoid their child support obligations by their actions, we do think that willful or voluntary unemployment or underemployment must result from an intent on the part of the parent to reduce or terminate his or her income." **Wilson v. Wilson**, 43 S.W.3d 495, 497 (Tenn. Ct. App. 2000). No evidence was submitted at the hearings below to support a finding that Father's changing jobs was the result of an intent by Father to reduce or terminate his income. To the contrary, the evidence preponderates in favor of a finding that Father's choice to leave Lane Furniture and begin working for his stepfather at Ashley Furniture in January of 2006 was reasonable, and made in good faith. This precludes a finding of willful or voluntary underemployment, therefore any imputation of additional income to Father on this basis was erroneous.

---

[4]Additionally, the Guidelines provide a list of factors to be considered by a tribunal when making a determination of willful and voluntary underemployment or unemployment. *See* Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(2)(iii) (2006).

Mother's income tax returns from 2003, 2004, and 2005, reflected gross incomes of $103,921; $23,776; and $22,253; respectively. The court imputed income to Mother of $60,000 per year, and similarly provided no basis for this determination in its bench ruling, or the corresponding order entered on August 1, 2006.[5]

The trial court ordered the parties' attorneys to complete child support worksheets based upon these imputed income figures, but stated that "a figure somewhere in the neighborhood of $3,434.50 [sic], which was the original amount of child support, should be the approximate range that the ultimate child support should be" and that "if it is determined based on the current guidelines that the amount will be less . . . there should be or could be an upward deviation in the amount of child support that Mr. Edgeworth would be paying from whatever the guideline figure is." At the August 14 hearing, the parties reported their calculations to the trial court:

| The Court: | What would the child support be according to the guideline[s]? |
| Mr. Moskovitz: | The child support, again, without any deviation, our figure is some $1,400[6] so– |
| The Court: | A $1,400 difference or – |
| Mr. Moskovitz: | No, no, no. The total support given that you've assigned some $160,000 [sic] to him and some approximately $60,000 of earning capacity to her, the total figure – and there's no dispute, I don't believe, relative to the amount of days. That's not a dispute we're having. But the total figure that I've got is some $1,400. |
| | So she would – she would suffer some $2,700 decrease in child support based on the figures you've asked us to run. |

The trial court then stated that the "$3450 figure was purely based upon what the parties had agreed to in a previous [o]rder based on the income producing ability of Mr. [Edgeworth] at that time[]" and that it had "no idea as to what the actual guidelines would dictate based on the current standard." At the hearing, counsel for both parties stated their clients' mutual preference that the children remain in private school. Counsel for Mother advocated in favor of application of the hardship provision of the Guidelines, located at Tenn. Comp. R. & Regs. 1240-2-4-.07(2)(h), in order to deviate the amount upward. Before this issue could be addressed by the court, however, the parties

---

[5] Father's contention that the $60,000 figure represented an average of Mother's gross income from the previous three years is without merit, based upon a simple application of arithmetic.

[6] Given the trial court's lack of explanation regarding its determination of the parties' respective incomes and failure to attach child support worksheets to its order, we believe that it would be premature for this Court to comment on the correctness of the child support amount determined by counsel. Therefore, we express no opinion as to these calculations.

engaged in heated argument regarding Mother's pending petition for contempt.[7]   Finally, the chancery court ruled as follows:

> The Court:    I've heard enough.  I have heard enough.  You have a Court Reporter.   Either party can appeal the Court's decision.
>
> The Court is setting the child support at $3450 retroactive to the date of the last hearing. . . . That includes any amount of contribution towards the private school tuition.  That is not to be added to the $3450. . . . If Mr. . . . Edgeworth wants to contribute more he can do so.  But that includes any amount [of] contribution towards the private school tuition. . . .

This ruling was entered by order of the chancery court on September 15, 2006.

In ***Guzman v. Alvarez***, 205 S.W.3d 375 (Tenn. 2006), the Tennessee Supreme Court reviewed several aspects of a divorce and child support judgment, including a trial court's order of child support based upon the flat percentages model of the Tennessee Child Support Guidelines.  In remanding with directions to the trial court to make further findings regarding the father's income and child support obligation, the Court explained its reasoning as follows:

> The trial court did not specify in its order whether the $10,176.50 constituted net income or gross income and does not explain how it computed Mr. Alvarez' income and his child support obligation. Furthermore, we are unable to ascertain from the record the basis for the trial court's computation.  The record does not indicate that the trial court intended to deviate from the Guidelines, and the trial court failed to make the written or specific findings required to deviate from the Guidelines.

***Guzman***, 205 S.W.3d at 383.

We reverse the trial court's order modifying Father's child support obligation from $4100 per month to $3450 per month, and remand for further proceedings.  As in *Guzman*, the trial court in this case did not specify in its order whether the imputed incomes to Mother and Father, $60,000 and $156,000 respectively, constituted net income or gross income, nor are we able to ascertain from the record the mathematical basis for the trial court's computation of these figures.  The matter is

---

[7]Mother's petition for contempt and wage assignment was dismissed by order entered on November 14, 2006.

remanded, therefore, to the chancery court in order to determine the parties' respective current gross incomes. The court should then determine whether a significant variance exists, as defined by the Guidelines, in Father's income reflected in the October 2004 order which set child support at $4100 per month, and Father's current income with Ashley Furniture. If a significant variance is found, and the chancery court determines that a modification is justified according to the Guidelines, the court should then use the child support worksheets to calculate child support using both parties' respective incomes and according to the Guidelines, as provided by Tenn. Comp. R. & Regs. 1240-2-4-.04, and include its calculations in its final order, as further required by the Guidelines. If, in setting this child support amount, the court finds that a deviation is necessary in order to accommodate for extraordinary educational expenses, or otherwise,[8] the court shall provide written findings in this regard, as required by Tenn. Code Ann. § 36-5-101 (e)(1)(A) and the Guidelines. Mother's request for attorneys' fees incurred as a result of this appeal is respectfully denied.

## V. CONCLUSION

For the foregoing reasons, the judgment of the chancery court is reversed and remanded for further proceedings consistent with the Guidelines and this opinion. Costs are to be assessed equally against Appellant, Stacey Edgeworth, and Appellee, Thomas Edgeworth.

---

[8] Without expressing an opinion as to its applicability to this case, we note that on remand, the trial court might also consider the "hardship provision" of the Guidelines, which provides in part:

> Any time following the effective date of these Rules when a tribunal is considering modification of an order initially established under Tennessee's Flat Percentage Guidelines, and the tribunal finds a significant variance between the amount of the existing child support order and the amount of the proposed child support order calculated under this chapter, which change results from the application of the guidelines rather than from the change in the income and/or circumstances of the parties, then the tribunal may modify the current child support order up to the full amount of the variance or may apply a hardship deviation as described below in parts 2-4.

Tenn. Comp. R. & Regs. 1240-2-4-.07(2)(h) (2006).

_____
ALAN E. HIGHERS, JUDGE